# WILLIAM M. GOZA, EXECUTOR OF ESTATE OF A. F. WENTWORTH, v. FAIRMONT NATIONAL BANK OF FAIRMONT, MINNESOTA.

195 N. W. 2d 424.

February 11, 1972—No. 42866.

*Newton A. Johnson* and *Seifert, Johnson, Hand & Berens,* for appellant.

*Thomas E. Dougherty* and *Dougherty & Scott,* for respondent.

Heard before Knutson, C. J., and Peterson, Kelly, and Hachey, JJ.

KELLY, JUSTICE.

Defendant bank appeals from the district court's denial of its alternative motion for amended findings or for a new trial. The factual setting concerns a purported pledge, and the issues are whether the pledgor had authority to make the pledge and whether a pledge was effectively created. We answer both questions in the affirmative, reverse the lower court's ruling, and order judgment for defendant.

Plaintiff is the executor of the estate of A. F. Wentworth. During 1957 Mr. Wentworth obtained two loans totaling $25,000 from defendant bank and pledged 5,000 shares of Stokely-Van Camp, Inc. stock worth approximately $90,000 as security. At the time the first loan was obtained, Mr. Wentworth gave Mrs. Wentworth a stock power for the shares that he had pledged.[1] Prior to that time his wife had been one of the incorporators of a venture called Fairmont Modern Homes, Inc., of which she was majority shareholder and secretary-treasurer.

During 1957 Fairmont Modern Homes also borrowed a total of $25,000 from the bank. Mrs. Wentworth, in her capacity as an officer of Fairmont Modern Homes, executed the notes for these loans. The notes pledged the same 5,000 shares of Stokely-

---

[1] "KNOW ALL MEN BY THESE PRESENTS,
that I, A. F. Wentworth FOR VALUE RECEIVED, have bargained, sold, assigned and transferred, and by these presents do bargain, sell, assign, and transfer unto the Fairmont National Bank, Fairmont, Minnesota 5,000 Shares of the Cumulative Convertible Second Preferred STOCK of the Stokely-Van Camp, Inc. Fairmont, Minnesota standing in my name on the books of the Corporation represented by Certificate No. NSP 95 Cert. Nos. NSP236-237-2,000 shares each exchanged for Cert. # NSP235-1000 Shares and herewith and I do hereby constitute and appoint Mrs. Edith Wentworth my true and lawful Attorney IRREVOCABLY, for me and in my name and stead but to use, to sell, assign, transfer, hypothecate, pledge and make over all or any part of the said stock, and for that purpose to make and execute all necessary acts of assignment and transfer thereof, and to substitute one or more persons with like full power, hereby ratifying and confirming all that my said Attorney or its substitute or substitutes shall lawfully do by virtue hereof."

Van Camp stock which the bank already held as security for Mr. Wentworth's loan.

Both Mr. and Mrs. Wentworth are now deceased. Plaintiff, as executor of Mr. Wentworth's estate, tendered the money due on Mr. Wentworth's notes and demanded possession of the pledged stock. The bank accepted the payment but refused to return the stock. It is the bank's position that it holds the stock as security for the Fairmont Modern Homes loan which has not been paid.[2] Plaintiff contends that Mrs. Wentworth did not have authority to pledge the stock for a loan to Fairmont Modern Homes and that she never made an effective pledge. The trial court agreed with the latter of plaintiff's contentions, but did not rule upon the former contention. Because we believe that Mrs. Wentworth did effectively pledge the stock, we must first determine whether she had the requisite authority.

■ The stock power gave Mrs. Wentworth authority to pledge the stock. The power recites that she could "sell, assign, transfer, hypothecate, *pledge* and make over all or any part of the stock and for that purpose to make and execute all necessary acts of assignment and transfer thereof, and to substitute one or more persons with like full power * * *." (Italics supplied.) The stock power is general in scope and allowed Mrs. Wentworth to do anything with the stock that Mr. Wentworth could do. Since Mr. Wentworth could have pledged the stock as collateral for a loan to Fairmont Modern Homes, so also Mrs. Wentworth had that authority. The fact that she pledged the stock in her capacity as an officer of the corporation rather than in her individual capacity is of no significance since the stock power gave her authority "to substitute one or more persons with like full power" to pledge all or any part of the stock. Mrs. Wentworth's act in pledging the stock in her capacity as an officer presupposes she as an individual gave to herself the power to make the pledge in her other capacity.

---

[2] Neither party makes any allegation of fraudulent conduct. There is nothing to indicate that the Wentworths acted in bad faith.

Moreover, a fair reading of the evidence convinces us that the parties intended that Mrs. Wentworth have authority to make the pledge. The Wentworths were experienced in business affairs and must have realized that a bank would not extend credit to a newly formed corporation without security. Mr. Wentworth's desire to assist Fairmont Modern Homes is shown by loans he made to it totaling $17,000. In order to effect repayment of part of this $17,000, Mr. Wentworth pledged other shares of Stokely-Van Camp and executed a stock power to Mrs. Wentworth to enable her personally to borrow $11,000. She paid Mr. Wentworth $11,000, and the corporation executed two notes to her which were part of her estate when she died.

It is also important to emphasize the familial relationship of the parties. It may be assumed that Mr. Wentworth had an interest in assisting his wife and her corporate venture.

From the face of the stock power and the evidence showing the intent of the Wentworths, we conclude that Mrs. Wentworth had authority to pledge the stock as security for the bank's loan to Fairmont Modern Homes.

■ The second issue which we must decide is whether Mrs. Wentworth effectively pledged the stock. The trial court held that no pledge was created because "no physical act on her part was performed to effectuate a pledge." The legal question presented is whether a pledge may be created by a writing when the pledgee is already in possession of the goods. The early case of Combs v. Tuchelt, 24 Minn. 423, 426 (1878), answers this question in the affirmative:

"The transfer of possession necessary to a valid pledge does not require a manual delivery of the pledged property by the pledgor, or a manual receipt of it by the pledgee. No formal delivery is required. It is enough if, the property being present, it is committed by the pledgor to the exclusive control and charge of the pledgee."

It follows that the writing signed by Mrs. Wentworth is an effec-

tive pledge. Defendant is entitled to hold the stock until the debt is satisfied.

The lower court ordered partial judgment in plaintiff's favor, delaying the issue of whether the bank was liable for loss of value of the stock. The partial judgment is reversed with directions to order judgment for defendant as to the entire action.

Reversed.

MR. JUSTICE TODD, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.